UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Harold S. Goldberg,

                         Plaintiff,          CV-04-5098 (CPS)

        - against -                          MEMORANDUM
                                             OPINION AND ORDER

Blue Ridge Farms, Inc., Seymour Siegel,
and June Siegel,

                         Defendants.

----------------------------------------X

SIFTON, Senior Judge.

        Harold S. Goldberg commenced this action against Blue Ridge

Farms, Inc. ("the Farm") and Seymour and June Siegel ("the

Siegels") alleging a claim for breach of a contract to repay a

promissory note.  The Siegels and the Farm filed cross-claims

against each other for indemnification.  According to the

complaint, Goldberg is a citizen of New Jersey, and the Siegels

are citizens of New York.[1]  Blue Ridge Farms is a New York

corporation with its principal place of business in New York.

The amount in controversy exceeds $75,000.  Previously, I granted

summary judgment to Goldberg on his breach of contract claim

against all defendants.  Presently before the Court is Goldberg's

motion for attorneys' fees pursuant to Federal Rule of Civil

--------------------

        [1] The Siegels state in their answer that they are citizens of
Florida.

Procedure 54(d) against all defendants, and Blue Ridge Farms'
motion for attorneys' fees pursuant to Federal Rule of Civil
Procedure 11(c)(1)(A).

For the reasons that follow, Goldberg's motion for
attorneys' fees is granted in part and denied in part, and the
Farm's motion for attorneys' fees is denied.  I conclude that
each of the Siegels and the Farm are jointly and severally liable
for $39,566.93 in attorneys' fees and $1,657.20 in costs.

<u>Background</u>

The following facts are drawn from the parties' submissions
and the Court's previous decision granting partial summary
judgment.  They are undisputed except where noted.

The Siegels are former owners of Blue Ridge Farms.  In 2003,
the Farm encountered financial difficulties, prompting Seymour
Siegel to ask Goldberg, his brother-in-law, for a loan.  Goldberg
agreed to provide a loan of $100,000, and on December 29, 2003,
transferred that amount to the Siegels' joint bank account.  The
Siegels in turn transferred the money to the Farm's bank account.
The parties executed a promissory note that reads in relevant
part:

> FOR VALUE RECEIVED, Blue Ridge Farms Inc., a New York
> corporation ("Borrower") located at 3301 Atlantic Avenue,
> Brooklyn, New York and June & Seymour Siegel, promises [sic]
> to pay to the order of Harold Goldberg with an address at 67
> Beverly Drive, Hawthorne, NJ 07506 ("Lender"), the maximum
> principal sum of one hundred thousand dollars and No/100

cents ($100,000), or such sum as may be advanced and
outstanding from time to time, with interest on the unpaid
principal balance at the rate and on the terms provided in
this Promissory Note (including all renewals, extensions or
modifications hereof, this "Note").
. . . .

ATTORNEYS' FEES AND OTHER COLLECTION COSTS.  Borrower shall
pay all of Lender's reasonable expenses incurred to enforce
or collect this Note.
. . . .

The Note is signed by Jeffrey,[2] June, and Seymour Siegel.[3]
Seymour Siegel states that he has not controlled the affairs of
Blue Ridge Farms since March 2004.

In a previous memorandum opinion and order, I granted
summary judgment for Goldberg against all defendants on his
breach of contract claim.  Goldberg also moved for sanctions
pursuant to Federal Rule of Civil Procedure 11 against all
defendants.  I denied the Rule 11 motion on the grounds that the
defendants' conduct did not warrant sanctions.

These motions for attorneys' fees followed.  Goldberg's
attorneys from the firm Ganfer & Shore state that they have
billed Goldberg for $66,705.06 in services as of April 30, 2005.
Including the cost of litigating this motion for attorneys' fees
and likely future collection costs, they estimate that the total
costs for litigating this case and collecting a judgment will

---

[2] Jeffrey Siegel was the president of Blue Ridge Farms.  He is
not a party to this action.

[3] The parties dispute the date that the contract was signed.  The
contract contains a header dating the document on December 31, 2003,
but it contains a footer dating it on February 23, 2004.

likely be $82,713.25 in attorneys' fees and $3,991.81 in costs. This amount was based in part on charging rates by Goldberg's lawyers of $175 to $200 for associate time and $425 for partner time.

## Discussion

### Goldberg's Motion for Attorneys' Fees

Federal Rule of Civil Procedure 54(d) allows motions for recovery of attorneys' fees if there is a "statute, rule, or other grounds entitling the moving party to the award." The promissory note in this case provides that "Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect this Note." Pursuant to this provision, Goldberg seeks recovery of $82,713.25 in attorneys' fees and $3,991.81 in costs. Both the Siegels and the Farm concede that this provision renders them liable for the legal fees Goldberg reasonably incurred.[4] They dispute only the amount that each owes and whether these amounts are owed jointly and severally.

#### Joint and Several Liability

A portion of the fees that Goldberg incurred during this litigation were a result of discovery disputes with the Farm. The Siegels argue that they should not be held jointly and severally liable with the Farm for costs incurred in discovery

_____

[4] In the absence of such a concession, an issue might exist whether "the Borrower" within the language of the Note refers to the Siegels.

disputes that did not involve them.  As discussed in this Court's previous memorandum opinion and order, the promissory note renders the Siegels and the Farm jointly and severally liable for repayment of the loan.  Absent a contractual provision to the contrary, joint and several liability between co-promisors on a contract commonly extends to attorneys' fee awards.  *See, e.g., Tenenbaum & Co., Inc. v. Colantuno*, 3 P.3d 456, 458 (Colo. App. 1999) (noting common law rule, but applying Colorado statute that, under the facts of the case, required apportionment); *Germania Bank v. Brehm,* 763 F. Supp. 1030, 1038 (E.D.Mo. 1991). *Am. Fed. Bank, FSB v. Number One Main Joint Venture,* 467 S.E.2d 439, 442-43 (S.C. 1996).  *But see Palatine Nat'l Bank of Palatine, Ill. v. Olson*, 366 N.W.2d 726, 732 (Minn. App. 1985) (joint and several liability for attorneys' fees not appropriate where defendants are liable for separate obligations on separate contracts).

Even were apportionment appropriate, the largest portion of Goldberg's legal fees were incurred litigating identical claims against both the Siegels and the Farm.  Although certain costs were generated primarily by litigation against one defendant -- for example the discovery dispute with the Farm -- other fees were incurred primarily in litigating claims against the other defendant -- for example the motion for summary judgment that was only opposed by the Siegels.  Where both defendants are liable on

identical theories of liability and the dispute centers around the same facts, joint and several liability for attorneys' fees is reasonable and appropriate.

Reasonable Fees

When a contract provides for attorneys' fees, the court will direct the losing party to pay the amount actually incurred, so long as those amounts are reasonable. *Sony Music Entertainment, Inc. v. Pedestal*, 01 Civ. 4033, 2002 WL 1226861, at *4 (S.D.N.Y. Apr. 9, 2002).[5] But it is generally recognized that courts "should exercise care and restraint when awarding attorney's fees." 10 WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2675.1, at 363 (3d ed. 1998). Where the hours expended appear unreasonable, courts frequently reduce the requested award, and the contract in this case so requires. *Id.* at 370.

New York courts calculate attorneys' fees using the lodestar method, the first step of which is to consider the number of hours reasonably expended. *McIntyre v. Manhattan Ford*, 672 N.Y.S.2d 230, 232 (N.Y. Sup. Ct. 1997). The second step is to determine a reasonable hourly rate for this work. *Id.* Defendants in this case do not dispute that the hourly rates charged by Goldberg's attorneys are reasonable; they contend,

_____

[5] New York courts frequently look to federal case law in determining whether an award of attorneys' fees are reasonable. *See, e.g., Bell v. Helmsley*, 111085/01, 2003 WL 21057630, at *1 (N.Y. Sup. Ct. Mar. 27, 2003).

however, that the number of hours is excessive.

<u>Lodestar</u>

Because defendants do not dispute that the hourly rate charged by Goldberg's attorneys is a reasonable market rate, the calculation of the lodestar turns largely on the number of hours expended on various aspects of this litigation. *See, e.g.*, *F.H. Krear & Co. v. Nineteen Named Trust.*, 810 F.2d 1250, 1263 (2d Cir. 1987). In determining the number of hours reasonably expended on litigation, a court considers:

> (1) hours which reflect inefficiency or duplication of
> services should be discounted; (2) hours that are excessive,
> unnecessary or which reflect "padding" should be disallowed;
> (3) legal work should be differentiated from nonlegal work
> such as investigation, clerical work, the compilation of
> facts and other types of work which can be accomplished by
> nonlawyers who command lesser rates; (4) time spent in court
> should be differentiated from time expended for out-of-court
> services; and (5) the hours claimed should be weighed
> against the court's own knowledge, experience and expertise
> as to the time required to complete similar activities.

*McIntyre*, 672 N.Y.S.2d at 232.

Determining the reasonableness of the hours expended is hampered in this case by the lack of detail in Ganfer & Shore's billing records. Many of the entries cover long periods of time, and are either described in conclusory fashion as, e.g., "research" without further description or are "mixed entries" that do not differentiate between multiple activities during a given time frame. For example, 7.3 hours, nearly an entire day's work, is accounted for in the entry "Revised Complaint; Drafted Summons; Drafted Civil Action Cover Page; Conferences with Steven

J. Shore; Organized copies for service; Teleconference with Clerk's office." (Plaintiff's Ex. B.) Courts routinely reduce fee awards where time sheets contain such "mixed entries" that do not provide the adversary the definiteness required to dispute their accuracy. *See, e.g., Domgan v. Ponte*, 972 F.2d 401, 425 (1st Cir. 1992), *vacated and remanded on other grounds*, 113 S.Ct. 1378 (1993); *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989).

Other entries are conclusory. For example, several entries are merely labeled "drafted papers," "revise memorandum of law," or "research." Courts frequently find that such entries do not meet the specificity required for a fee award. *See, e.g.*, *F.H. Krear & Co.*, 810 F.2d at 1265; *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510 (S.D.N.Y. 1994) (declining to award fees for entries described as "research for brief," "research and draft brief," "draft and edit brief," "telephone conference," or "review Macklowe files"); *Orshan v. Macchiarola*, 629 F. Supp. 1014, 1019 (E.D.N.Y. 1986) (declining to award a fee for hours documented with vague descriptions like "review correspondence" or "prepare correspondence"); *In re Ury*, 108 A.D.2d 816 (N.Y. App. Div. 1985) (reducing request from $30,000 to $13,000 where there was no categorical breakdown of services); *In re Schaich's Estate*, 55 A.D.2d 914 (N.Y. App. Div. 1977) (reducing fee award where attorney had not documented hours). Goldberg's motion for fees will be evaluated in light of these deficiencies.

## Hours and Fees Prior to Filing of Complaint

Goldberg seeks an award of approximately $8,000 for fees incurred prior to the filing of the complaint.  Much of this time appears, however, to be nonlegal work inappropriately billed at an attorney's customary rate.  One entry for 5.70 hours of associate time on November 16, 2004, is labeled "Prepared charts showing payments and monies owed; Drafted default letter; Prepared and organized envelopes; Sent letters to client for signature."  (Plaintiff's Ex. B.)  Another entry of 7.3 hours includes the task "Organized copies," and another for 1.5 hours is "Organized papers for service."  Much of this work, including preparing charts, organizing envelopes, and sending letters, is administrative.  Accordingly, no award will be granted for this inadequately described, ostensibly administrative work, and $2,537.50 will be deducted from Goldberg's fee request for the period prior to the filing of the complaint.

## Hours and Fees During Discovery

Goldberg also seeks an award in excess of $17,500 for fees incurred during discovery.  Goldberg attributes the number of hours to the Farm's "stonewalling" on document production.  The Farm contends that the hours spent litigating discovery motions was only necessary because Goldberg "continuously and unreasonably complained, [sic] engaging in futile letter-writing campaigns and causing multiple and completely unnecessary court

appearances." (Blue Ridge Farm Memo. 2.) The Farm does not dispute that Goldberg's discovery motions occurred only after it failed to comply with the Magistrate Judge's written order dated February 1, 2005, to produce the documents in issue. After the Farm failed to comply, the Magistrate Judge again on February 23, 2005, ordered the documents to be produced. In light of these rulings, the fees incurred litigating this issue are reasonable.

<u>Hours and Fees Litigating Summary Judgment and Rule 11 Motions</u>

During the course of this litigation, as noted, Goldberg filed motions seeking summary judgment and Rule 11 sanctions. The Farm had denied liability based on the now-concededly erroneous belief that it had never received money from Goldberg. The Siegels denied liability because of an erroneous legal conclusion that the contract rendered them merely guarantors of the Farm's debt. The summary judgment motion concerned whether these contentions were correct as a matter of law, and the Rule 11 motion concerned the related issue of whether they were reasonably supported by fact or law. The issues raised by the motions were, as a result, largely the same. With respect to both of these motions, Goldberg incurred approximately $37,000 in legal fees corresponding to close to 150 billable hours.

I find these hours out of proportion with the amount of time reasonably necessary to litigate these motions. First, the legal issues involved were neither novel nor complex. The single-page

contract concerned a commonplace loan, and the only legal issue
of substance was whether the Siegels were guarantors or
principals. Second, the issues raised by the Rule 11 motion for
sanctions and by the Rule 56 motion for summary judgment were
essentially the same, yet Ganfer & Shore billed Goldberg for at
least $16,212.50 in substantial part, if not entirely for time
related to the Rule 11 motion.[6] Third, the most common sanction
awarded for a successful Rule 11 motion is attorneys' fees
incurred as a result of the other party's unreasonable litigating
position. *See, e.g., Schottenstein v Schottenstein*, 04 Civ.
5851, 2005 WL 488648 (S.D.N.Y. Mar. 2, 2005) (awarding attorneys'
fees); *Tenay v. Culinary Teacher's Ass'n of Hyde Park, N.Y.,
Inc.*, 225 F.R.D. 483 (S.D.N.Y. 2005) (same). But the contract
already guaranteed Goldberg this benefit in the event that he
succeeded on his contract claim. Accordingly, Goldberg is not
entitled to the $16,212.50 associated with the unsuccessful Rule
11 motion.

## Expenses Incurred Preparing the Fee Application

Goldberg seeks recovery of $10,000 incurred in connection
with this application for attorneys' fees. Even where there is a
general agreement to pay attorneys' fees, expenses incurred in an
attempt to recover those fees are not customarily reimbursed.

---

[6] Achieving a precise calculation is difficult because several of
the entries are "mixed."

*F.H. Krear & Co.*, 810 F.2d at 1265. No special circumstances are present here justifying a different rule. Accordingly, $10,000 will be deducted from Goldberg's fee request.

### Fees Anticipated to Be Incurred in Collecting the Judgment

Goldberg seeks an additional $10,000 that he anticipates he is likely to incur in efforts to collect the judgment he has obtained from this Court. Goldberg provides no evidence that this is a customary or reasonable amount of money to expend in enforcing a judgment of this sort. Nor is it clear that any costs will be incurred. New York law does not permit an anticipatory award of attorneys' fees for efforts to be expended collecting on a judgment. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hartel*, 782 F. Supp. 22, 24 (S.D.N.Y. 1992); *Avco Fin. Servs. Trust v. Bentley,* 455 N.Y.S.2d 62, 63 (N.Y. Sup. Ct. 1982); *Marine Midland Bank v. Roberts,* 424 N.Y.S.2d 671, 673 (N.Y. City Civ. Ct. 1980); *see also Block v. Block*, 296 A.D.2d 343, 344 (N.Y. App. Div. 2002) (trial court should not award attorneys' fees in anticipation of costs a party is likely to incur on appeal); RESTATEMENT (SECOND) CONTRACTS § 352 ("Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty."). This is not to say, however, that Goldberg has no right to recover such costs once they are determined with greater certainty. Accordingly, no award of anticipatory fees will be made.

Lodestar Adjustment

After deducting $38,750 from the fee request for the reasons described above, the lodestar figure reduced to $43,963.25. The third step New York courts employ in assessing attorneys' fees is to adjust the lodestar up or down based on the following factors:

> (1) the novelty and difficulty of the questions presented;
> (2) the skill requisite to perform the legal services properly; (3) the preclusion of other employment by the attorney due to acceptance of the case; (4) whether the fee is fixed or contingent; (5) time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the amount involved and the results obtained; (8) the undesirability of the case; and (9) awards in similar cases.

*McIntyre*, 672 N.Y.S.2d at 328-29. No party has provided substantial evidence or argument concerning these factors.

As previously discussed, the legal questions presented by the single page contract in this case were not novel or complex. No trial resulted and the Farm eventually conceded liability. The only substantial, disputed legal question was whether the Siegels were guarantors or principals, which the Court resolved based on settled law. Accordingly, a ten-percent reduction in the lodestar is appropriate, resulting in a reasonable attorneys' fee of $39,566.93.

Costs

In addition, Goldberg seeks recovery of $3,991.81 in costs. These costs largely consist of $1,340.75 for photocopying 5,363 pages performed at a cost of $0.25 per page, and $1,999.42 for

Westlaw and other legal research expenses.  The Farm challenges these expenses on the grounds that most firms have a flat fee plan with Westlaw, and the rate and number of copies are excessive.

With respect to research expenses, the Second Circuit has held that computer research expenses are reimbursable.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 97-98 (2d Cir. 2004).  The research cost request does suffer, however, from a deficiency shared with the photocopy and attorneys' fee requests: a lack of documentation.  Goldberg has submitted no receipts or records concerning the rate that Westlaw charges or the number of hours of electronic research performed.  Nor do the submissions reveal the purpose of the large number of copies.  When the Court is unable to determine whether claimed copying or research costs are properly taxable under the governing law, the requested costs should be reduced. *Tyco Intern. (U.S.) Inc. v. John Does, 1-3*, 01 Civ. 3856 2003 WL 23374767, at *6 (S.D.N.Y. Aug. 29, 2003); *Meacham v. Knolls Atomic Power Labs.*, 185 F. Supp. 2d 193, 243 (N.D.N.Y. 2002). Under such circumstances, courts commonly reduce the copy fee request by 25%*, see id.*, and decline to award research costs. *id.; Tanzini v. Marine Midland Bank*, 978 F. Supp. 70, 85 (N.D.N.Y. 1997).  Consistent with these decisions, the Court will award $1,657.20 in costs.

Blue Ridge Farm's Motion for Fees Pursuant to Rule 11

Federal Rule of Civil Procedure 11(c)(1)(A) provides that a Court may, in its discretion, award attorneys' fees to the prevailing party on a motion for sanctions pursuant to Rule 11. The Farm contends that, because Goldberg's previous motion for Rule 11 sanctions against it was denied, it was the prevailing party and should be awarded $8,202.75 in fees.

Although a prevailing non-movant may be entitled to attorneys' fees when he successfully avoids Rule 11 sanctions, fees are infrequently granted where the motion was not clearly frivolous, filed for an improper purpose, or not well grounded in fact or law. *See Safe-Strap Co. Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003). Goldberg's motivation was premised on the argument that the Farm's denial of liability was unreasonable. Because the Farm later conceded liability, it cannot be said that Goldberg's Rule 11 motion, even if ill-advised, was clearly frivolous.[7] Accordingly, the Farm's motion for attorneys' fees is denied.

---

[7] Goldberg also contends that the Farm did not comply with Rule 11's safe harbor. The safe harbor is, however, inapplicable when a court awards attorneys' fees to the prevailing non-movant. *See* FED. R. CIV. PRO. 11 (advisory committee notes to 1993 amendments) (service of a cross motion should rarely be needed); *Safe-Strap Co., Inc.*, 270 F. Supp. 2d at 421.

## Conclusion

For the foregoing reasons, Goldberg's motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54 is granted and Blue Ridge Farm's motion pursuant to Federal Rule of Civil Procedure 11 for attorneys' fees is denied. The Siegels and the Farm are jointly and severally liable for $39,566.93 in attorneys' fees and $1,657.20 in costs.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated : Brooklyn, New York

July 26, 2005

/s/Charles P. Sifton (electronically signed)
United States District Judge